## 232.   OLLIFF *v.* THE STATE.

1. A judge whose father is the first cousin of the grandfather of the defendant in a criminal case is disqualified to sit therein, under the Civil Code, § 4045.
2. The defendant may successfully urge such disqualification, by a timely motion for a new trial, when it is made to appear that the facts upon which such disqualification is based were unknown to him and his counsel until after verdict. The rule precluding the losing party from complaining of the disqualification of a juror by reason of an unknown relationship to him will not be extended so as to apply where the disqualification exists as to the presiding judge.

Accusation of riot, from city court of Statesboro—Judge Brannen. January 10, 1907.

Submitted March 20,—Decided April 4, 1907.

*J. J. E. Anderson,* for plaintiffs in error.

*Howell Cone, solicitor,* contra.

POWELL, J. 1. The father of Judge Brannen, who tried this case, was a first cousin of the grandfather of Lester Olliff, one of the defendants. Under the method of computation approved in *Short* v. *Mathis*, 101 *Ga.* 287, the judge was disqualified. It appears that this disqualification was unknown to the defendants and

their counsel until after verdict, and was raised for the first time by the motion for a new trial. At common law the judge would not have been disqualified, but by our statute (Civil Code, §4045), "No judge or justice of any court, no ordinary, justice of the peace, nor presiding officer of any inferior judicature or commission, can sit in any cause or proceeding in which he is pecuniarily interested, or related to either party within the fourth degree of consanguinity or affinity, nor of which he has been of counsel, nor in which he has presided in any inferior judicature when his ruling or decision is the subject of review, without the consent of all the parties in interest; provided, that in all cases in which the presiding judge of the superior court may have been employed as counsel before his appointment as judge, he shall preside in such cases if the opposite party or counsel agree in writing that he may preside, unless the judge declines so to do."

2. The further question is presented, whether the losing party can complain that the presiding judge is related to him or to his codefendant. This precise question, so far as our investigation has disclosed, has never been before our Supreme Court. In cases of jurors it has been decided that the losing-party can not complain that one of the jurors is related to him. *Wright* v. *Smith,* 104 *Ga.* 174; *Sikes* v. *State,* 105 *Ga.* 592; *Downing* v. *State,* 114 *Ga.* 30. Shall the same rule be extended to the case of a disqualified judge? In the case of *Wright* v. *Smith,* supra, Justice Lewis states the reason of the rule, as applied to jurors, to be: "A juror would naturally be inclined to favor a kinsman rather than a stranger, in a contest between the two." And, "as a general rule, which is almost universal in its application, no litigant has the legal right to complain of anything occurring on the trial of his cause which is presumed to enure to his benefit. There is certainly no presumption that a party is hurt because of having a kinsman upon the jury." We are not prepared to give full personal assent to the correctness of the premise upon which the learned Justice's conclusion rests, but we are not reluctant to give it that judicial assent to which it is entitled as a precedent binding on this court. We think there is a plain legal distinction between the two cases,—that of a presiding judge, and that of a juror. In the first place there is no statute forbidding a juror to sit in a case in which he is disqualified; so far as our code goes upon the subject

the relationship of the juror is merely a ground for challenge. In the case of a judicial officer there is a positive and apparently mandatory statute forbidding that he shall sit in the cause. The functions to be performed by a juror are essentially different from those delegated to the judge. In the performance of his duties in the case the juror is invested with little or no discretion; he merely decides the facts. It may be reasonable to assume that a juror would more readily believe testimony tending to incriminate a stranger than that tending to incriminate his own flesh and blood. In contests involving veracity we generally incline to the side of our own kin people. School rows, and especially those complaints so frequently brought to the attention of the public, and more particularly of school boards, by parents accusing teachers of unjustly treating their children, are largely traceable to the fact that parents are generally incapable of realizing either that their children— their close kin—could be guilty of wrong-doing or of giving an unjust or colored account of what has really happened. This same human attribute, differing only in degree, so usually extends to relations more remote than that of parent and child as that it may well justify the courts in presuming that every kinship, at all close, will incline the opinion of the ordinary person to the side of his kinsman, and not to the contrary, upon issues of veracity or of guilt. But in the case of judges, especially of trial judges, we apprehend that the statutory disqualification was not imposed so much on account of that very small jurisdiction which they have over the facts, nor on account of their duty of deciding the law, but mainly because of the many broad discretions which they are generally called upon to exercise in the course of trials. So various, so broad and powerful, are the many matters of discretion left almost absolutely in the hands of the trial judges, that many students of our political system have declared that nowhere else in all the other branches of government is so great a power lodged. Yet where is there an honest judge (and, be it said to the glory of our judicial system, few have been the number of judges who were not so), who, when it comes to the exercise of his discretion as between a kinsman and a stranger to his blood, will not, even unconsciously, lean back a little, or more, from the exercise of that discretion in behalf of his relative?

Speaking for myself,—and I am authorized to say that my col-

leagues of the court fully concur in the sentiment,—I feel,—yes, I know,—whether I view the question from the aspect of the judge or of the party to the suit, that the kinsman's opportunities of obtaining full justice from the judge in the exercise of a discretion is not so complete as that of his adversary. Try me not before my kinsman, nor command me to try him. I speak not altogether from observation and common knowledge, but also from experience. In my earlier career I was vested with a minor judicial function, and before me I frequently had as an attorney my father —a father who stood in even closer relation to me than most fathers do to their sons,—and being conscious not only of the love I bore him, but also of the high regard I held for his views upon the law, as well as upon questions of right and wrong, I attempted to hold myself, by very will power, to a perfect impartiality in his cases, and thought I had succeeded in so doing; but now as I look back and view the different incidents of the trials in which he appeared before me, although I can point to no instance in which I ever leaned too much his way, I can see that I did not always do him that full justice which my judicial discretion would have allowed.

The Supreme Court, speaking through Justice Cobb, in the case of *Roberts* v. *Roberts,* 115 *Ga.* 263, says: "The reasons at the foundation of the rule which forbid a juror from sitting in a case where he is related to some one pecuniarily interested in the result of the suit would also apply in the case of a judge who was in a similar situation." We are willing to go further and say that there are many other and even stronger reasons forbidding the judge to sit under such circumstances. We can not believe that the law presumes as a fact what we well know is rarely true, that the disqualified judge would lean to his kinsman, rather than to the other party in the cause; and we are therefore unwilling to hold, in the case of the judge, as the Supreme Court has held in the case of the juror, that the disqualification is presumptively a matter of benefit to the related party, of which he can not complain. It is probably true in the case at bar that Judge Brannen did not know of his relationship to the defendant, Olliff, until after the trial ended; certainly there is nothing in the record which indicates any failure on his part to give to the defendants that fair and impartial trial which they would have received at the hands of any other honest

judge; yet the result will be the same; a new trial must be ordered; for the rule we are announcing is not one for special, but for general application.   Compare *Beall* v. *Clark,* 71 *Ga.* 849.

*Judgment reversed.*